STATE, Respondent, v. MORTON, Appellant.

(162 N. W. 155.)

(File No. 4074. Opinion filed April 2, 1917.)

1. **Intoxicating Liquors—Sale of by Prescription—Sale for Beverage —Evidence, Sufficiency of—Statute.**

Where defendant, a practicing physician, gave to a person a prescription for brandy, reciting that the brandy was to be used for medicinal use and not to be given away, under which prescription said person procured the brandy at a drug store of which defendant was part owner; the person to whom sold having told defendant that his stomach bothered him, that he could not eat, that he felt tired, and had no appetite, that his work was too heavy for him, that defendant told him that a little brandy would be as good as anything he could give him, that he took and used it as directed; defendant testifying that said person stated to him that he had a general depression and weakness, and testified further that his general appearance indicated that he was run down and seemed to be in a condition where, to defendant's best judgment, he needed a stimulant, that he lacked nourishment and was subnormal and ailing, that he directed said person to take an ordinary wineglass three times a day ten or fifteen minutes before eating and not to exceed that quantity; that it would be impossible that that amount, so taken, would be intoxicating, and that his conviction was that the prescription was strictly according to law and that he supposed it was intended for medicine, **held**, that the evidence showed the liquor so obtained was not drunk as a beverage but was taken as a medicine as directed; and that it was insufficient to show the prescription issued for intoxicating liquor intended to be used as a beverage in violation of Laws 1905, Chap. 123, (1) making it unlawful for any physician to write, furnish, sell or give to any person any prescription for intoxicating liquor to be used as a beverage, or for any purpose, except for medicinal purposes in case of actual sickness, (2) or for him to furnish to any person a prescription for intoxicating liquors, except to a patient of such physician in cases where such patient is afflicted with some disease and his condition is such that, in the opinion of such physician, the taking by said patient of such intoxicating liquors would be beneficial to said patient.

Whiting, J., dissenting.

2. **Intoxicating Liquors—Unlawful Sale Through Prescription—Sale for Sick Patient—Statute Construed.**

Laws 1905, Chap. 123, Sec. 1, making it unlawful for any physician to write, furnish, sell, or give to any person any prescription for intoxicating liquors to be used as a beverage, or

for any purpose except for medicinal purposes in case of actual sickness, held, to apply only in cases where some one other than the patient himself makes application to the physician for the prescription.

Whiting, J., and Gates, P. J., dissenting

3. **Intoxicating Liquors—Sale Under Prescription—"Patient" of Prescribing Physician—Statute.**

Laws 1905, Chap. 123, Sec. 2, making it unlawful for any physician to furnish any person a prescription for intoxicating liquors except to patient of such physician in case such patient is afflicted with some disease and his condition is such that in the opinion of such physician the taking by said patient of the intoxicating liquor prescribed would be beneficial to the patient, has application in cases where purchaser of the prescription is the patient of the physician issuing the prescription, which patient has sought the professional aid, skill and advice of such physician, and has stated to him as such physician, his physical condition; that where the evidence shows that such person so applying has failing appetite, general depression and weakness, felt tired from overwork and lack of nourishment, was not in a normal condition of body, was subnormal and ailing, such person in this physical condition was sick and afflicted with disease within the meaning of said statute, and in such condition as would warrant a physician in expressing his judgment or opinion as to whether such patient needed alcoholic stimulant; and such person in that condition, applying to a physician, for medical aid and advice is a patient within the meaning of said statute.

Whiting, J., and Gates, P. J., dissenting.

4. **Intoxicating Liquors—Sale Under Prescription—Whether Physician Acted in Good Faith—Essence of Statute.**

In a prosecution of a physician for writing and furnishing a prescription for intoxicating liquors, held, that, under Laws 1905, Chap. 123, the essence of this class of cases is whether or not under all the evidence adduced on trial the physician acted in good faith in giving the prescription.

5. **Intoxicating Liquors—Sale Under Physician's Prescription—State, Burden of Proof on—Reasonable Doubt.**

In prosecutions under Laws 1905, Chap .123, against physicians for writing and furnishing prescriptions for intoxicating liquors, etc., held, that the burden of proof is upon the state to show by evidence beyond reasonable doubt, a violation of the statute.

Gates, P. J., concurring specially.

Appeal from Circuit Court, Roberts County. Hon. THOMAS L. BOUCK, Judge.

The defendant, G. M. Morton, was convicted of the offense of unlawfully furnishing a prescription for intoxicating liquors, to be used as a beverage, etc., and he appeals. Reversed and remanded.

*Howard Babcock,* for Appellant.

*C. C. Caldwell,* Attorney General, and *C. R. Jorgenson,* for the State.

(3.)    To point three of the opinion, Respondent cited:    Peo. v. Loomis, (Mich.) 126 N. W. 985, 987.

McCOY, J.    [1]This appeal was taken from a judgment of the circuit court of Roberts county convicting the defendant, a practicing physician, of unlawfully furnishing to one Hougen a prescription for intoxicating liquor to be used as a beverage, and not for medicinal purposes.    Among other things, the appellant assigns the insufficiency of the evidence to sustain verdict and judgment.    It appears from the evidence that appellant, on the 1st day of July, 1915, issued and gave to Hougen a prescription for one-half pint of brandy, and which prescription recited that said brandy was to be used "for medicinal use, and not to be given away."    On this prescription Hougen procured one-half pint of brandy at a drug store of which appellant was a part owner.    Hougen, who was a stone mason, a witness for the state, testified that he went to Dr. Morton and told him that his stomach bothered him and that he could not eat, that he felt tired and had no appetite, and that his work was too heavy for him; that appellant told him that a little brandy before his meals would be as good as anything he could give him; that he took and used it the way he directed.    Appellant testified that he had been a practicing physician about 35 years; that he had known Hougen about 12 years; that at the date of this prescription Hougen came to him and stated that his appetite was failing, and he had general depression and weakness; that his general appearance indicated that he was run down and he seemed to be in a condition where, to the best of my judgment as a physician, he needed a stimulant.    "It seemed to me that he was simply run down through overwork and lack of nourishment; he was not in a normal condition of body; he was subnormal and ailing.    From his appearance, and from what he told me, it was my opinion that he needed a stimulant of some kind, and I thought a half

pint of light stimulant was absolutely indicated. My directions were to take an ordinary wine glass three times a day 10 or 15 minutes before eating, and not to exceed that quantity. It would be impossible that the amount taken in that way would be intoxicating. A less quantity than that would not stimulate. My conviction was that the prescription was strictly according to law. I supposed it was intended for medicine, and had no other motive in prescribing it." The undisputed evidence shows that the liquor obtained under the prescription given to Hougen was not drunk as a beverage, but was taken as a medicine as directed by appellant. It also appeared that appellant had issued some four or five other prescriptions for similar amounts of intoxicating liquors to other parties about the time of issuing the prescription on which this prosecution is based. There is nothing in the record to disclose that any of these other prescriptions were issued in violation of law. We are of the view that the evidence was wholly insufficient to show that the prescription in question was issued for intoxicating liquors intended to be used as a beverage and in violation of the provisions of chapter 123, Laws of 1905.

[2] There is some contention made that the rule announced in State v. Sasse, 6 S. D. 212, 60 N. W. 853, 55 Am. St. Rep. 834, is applicable to the facts of this case. We are of the opinion that this contention is not well grounded. It is made criminal to sell intoxicating liquors to a minor under any circumstances, no matter whether the seller, in good faith, believed the purchaser to be a minor. Under the statute in question (chapter 123, Laws of 1905) a physician may sell or give a prescription for intoxicating liquors in cases of actual sickness, and when the person to whom the prescription is given is a patient of the physician who is afflicted with some disease, and his condition is such that, in the opinion of the physician, the taking by said patient of intoxicating liquors would be beneficial to him. We are of the view that section 1 of said chapter 123 was intended to apply in cases where some one other than the patient himself makes application to the physician for the prescription, in which case the physician must ascertain whether the person by whom the liquor is to be used is actually sick, and in which case the sick person by whom the liquor is to be used might not be present before the physician

:ssuing the prescription, and which sick person might not be under the care of a physician at all, or might be the patient of some other physician.

[3] We are also of the view that section 2 of said chapter 123 has application in cases like the one at bar where the purchaser of the prescription is the patient of the physician who issues the prescription, and which patient has sought the professional aid, skill, and advice of such physician. We concede that a physician without any reasonable cause therefor could not arbitrarily say that a person was afflicted with a disease and, in his opinion, needed an alcoholic stimulant; but that is not this case. The undisputed evidence in this case shows that the person to whom the prescription was given personally applied to the appellant, in his capacity as a physician, for aid and advice in relation to his physical condition; that such person had failing appetite; general depression and weakness; felt tired from overwork and lack of nourishment; was not in a normal condition of body; was subnormal and ailing. We are of the view that a person in this physical condition was sick and afflicted with a disease, within the meaning of this statute, and in such a condition as would reasonably warrant a physician in exercising his judgment or opinion as to whether or not such patient needed an alcoholic stimulant. Where a person in such a physical condition applies to a physician for medical aid and advice, we are of the view that such person is a patient within the meaning of this statute. How does a physician ordinarily ascertain whether or not a patient is sick and afflicted with some disease and in a condition that would authorize a prescription for alcoholic liquor? By what the patient tells him taken in connection with the physician's personal observation of the physical appearance and examination of the patient.

[4, 5] The essence of this class of cases is whether or not under all the evidence adduced on the trial the physician acted in good faith in giving the prescription. Under the law in relation to the sale of intoxicating liquors to minors the good faith of the seller is not of the essence of the offense. In this case, as in all other criminal actions, the burden of proof was on the state to show by evidence, beyond all reasonable doubt, that appellant violated the provisions of the statute in question.

There is not a scintilla of evidence tending to show that the giving of the prescription in question was a pretext for the purpose of evading the law. There is no evidence in this case sufficient to sustain a conviction or that would overcome the presumption of innocence of the appellant. There is no evidence in this case in any manner inconsistent with appellant's innocence.

Other assignments of error are made, but it will serve no useful purpose to refer thereto.

The judgment and order appealed from are reversed, and the cause remanded for further procedure consistent with this opinion.

WHITING, J. I most earnestly dissent from that part of the foregoing opinion wherein my Colleagues have construed the provisions of sections 1 and 2, c. 123, Laws 1905. Those sections read as follows:

"Sec. 1. That it shall be unlawful for any physician to write, furnish, sell or give to any person any prescription for any kind of intoxicating liquors to be used as a beverage or for any purpose except medicinal purposes in case of actual sickness.

"Sec. 2. It shall be unlawful for any physician to furnish any person a prescription for any kind of intoxicating liquors, except to patients of such physician in case where such patient is afflicted with some disease and his condition is such that, in the opinion of said physician, the taking by said patient of the intoxicating liquors prescribed would be beneficial to said patient."

It will be seen that section 1 specifically provides that no prescription for intoxicating liquors can be given "except for medicinal purposes in case of actual sickness." No language could be plainer and declare more absolutely that the lawfulness of a sale depended upon the fact of sickness, and not upon the doctor's belief in relation thereto. Section 2 in no manner modifies section 1, but, on the other hand, names those conditions, and those only, under which a physician can give a prescription for "medicinal purposes in case of actual sickness." He cannot give such a prescription merely because the patient is actually sick; but this section restricts the physician further and prohibits him from giving such prescription even when his patient "is afflicted with some disease" unless the physician believes that this "disease," this "actual sickness," is of such a nature that this particular medicine, intoxicating liquors, "would be beneficial to said

patient." The lawmakers of this state, by the enactment of this statute, placed in the hands of the honest practitioner a shield which he has been able to use as a protection against the importunities of those, and their name is legion, who willingly feign illness in order to obtain the coveted beverage, and by this same statute the public has received protection against the unscrupulous physician who, for filthy lucre, is willing to prostitute his talents. This statute comes clearly within that numerous class of statutes of which it is said in 8 R. C. L. 62:

"There are many instances in recent times where the Legislature in the exercise of the police power has prohibited, under penalty, the performance of a specific act. The doing of the inhibited act constitutes the crime, and the moral turpitude or purity of the motive by which it was prompted and knowledge or ignorance of its criminal character are immaterial circumstances on the question of guilt. The only fact to be determined in these cases is whether the defendant did the act. In the interest of the public the burden is placed upon the actor of ascertaining at his peril whether his deed is within the prohibition of any criminal statute."

An examination of the cases cited in support of the above shows various subjects covered by such statutes, sales of liquors, sales of oleomargarine, shipping prohibited articles, obstructing streets, bigamy, rape, selling adulterated foods, etc. The above holding is in direct line with that of this court in State v. Sasse 6 S. D. 212, 60 N. W. 853, 55 Am. St. Rep. 834, and other cases where knowledge or intent was not made an element of the crime under consideration. If the grocer is criminally liable for sale of adulterated food regardless of his honest belief in the purity thereof, if the butcher is criminally liable for sale of meat from a calf below the age for killing as fixed by statute though the butcher honestly believes such calf to be of lawful age, if a railroad is liable for shipping prohibited articles even though its officers and employes honestly believe the articles to be of a non-prohibited class, if a man is liable to be punished for bigamy when he honestly and for good reason believes his lawful spouse to be dead or that a valid decree of divorce had been granted severing the marriage relation, why should not such a statute as the one before us be construed as it clearly reads and a phy-

sician be held to liability when he gives a prescription to one not sick, the law having permitted him to practice as a physician because he professes to be possessed of peculiar knowledge qualifying him to diagnose disease?

GATES, P. J. (concurring specially.)  I concur in a reversal of the judgment upon the ground that but for the unwarranted cross-examination of defendant as to transactions other than the one relied upon the evidence would have been entirely insufficient to warrant a conviction.  The defendant was practically forced to furnish evidence to convict himself in violation of article 6, § 9, of the Constitution.

I also concur in the views expressed by WHITING, J., as to the proper interpretation of sections 1 and 2 of chapter 123, Laws 1905.